UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

EDWIN BACON HALL MD,  No. 19-10585-j7

Debtor.

**MEMORANDUM OPINION AND ORDER RESULTING FROM**
**FAIRNESS HEARING REGARDING SETTLEMENT BETWEEN**
**THE CLAIMS ADMINISTRATOR AND MINOR CHILDREN**

THIS MATTER comes before the Court on the *Motion for Sealed Fairness Hearing to Approve Distribution of Settlement for the Benefit of Minors as Recommended by Guardian Ad Litem Feliz Rael* (the "Motion for Fairness Hearing" – Doc. 376). The Court held a preliminary hearing on the Motion on July 20, 2022, and an evidentiary hearing on August 4, 2022. At the evidentiary hearing, Danielle Ceballes of Bencoe & LaCour Law, P.C. (the "Bencoe Law Firm"), appeared as counsel for Sylvie Schultz in her capacity as Personal Representative of the wrongful death estate of Skyler Nichole Montano and as guardian and next friend of A.D. and G.M., minor children;[1] Feliz Rael appeared in her capacity as Guardian *Ad Litem* (the "GAL") for the Children (see Doc. 318); and Gregory Chase appeared in his capacity as Claims Administrator (see Doc. 280). The parent and/or guardian of each minor child was also present at the evidentiary hearing.

Findings of Fact

On April 19, 2021, the Court approved a global settlement in this bankruptcy case, which among other things consolidated sources of recovery for claimants such as Ms. Schultz through the creation of the Hall Medical Claims Trust. *See* Docs. 261 & 279. Due to the receivership of one of the Debtor's medical malpractice insurance companies, *see* Doc. 261 at 4, it was anticipated that meritorious claims would only receive a *pro rata* share of the funds in the Hall Medical Claims Trust rather than full recovery.

On June 30, 2021, the Court issued an *Order Regarding Fairness Hearing* (the "Order for Fairness Hearing" – Doc. 302) setting forth its expectations for a fairness hearing on Ms. Schultz's claim. In the order, the Court stated:

> Since the real parties in interest to P.R. Schultz's claim against the Hall Medical Claims Trust are statutory beneficiaries who are minor children, it is appropriate for a court to conduct a fairness hearing to review and enter an Order on the matter, to include (1) whether the Trustee's proposed distribution is in the minors' best interests and should be accepted by Claimant Schultz; (2) whether the disbursement of those proceeds is in the minors' best interests; (3) to approve the specific means for distributing funds to each of the minors for their benefit and protection; and (4) if applicable, to request a mediated

---
[1] Sylvie Schultz in her capacity as Personal Representative hereafter is called "Ms. Shultz." The minor children, A.D. and G.M., hereafter are called the "Children."

1

settlement of the Claims Administrator's valuation of the Claim pursuant to the Medical Claims Settlement and Distribution Procedures for the Hall Medical Claims Trust, without proceeding all the way to final arbitration (the "Fairness Hearing")[.]

Doc. 302 at ¶ F. The Order for Fairness Hearing further ordered:

> Promptly after either (a) the Claims Administrator communicates a determination of the gross valuation of Schultz's claim that Schultz accepts or (b) any mediated settlement or arbitrated amount is determined in accordance with the Medical Claims Settlement and Distribution Procedures for the Hall Medical Claims Trust that Schultz accepts, Schultz shall file a motion seeking a Fairness Hearing.

*Id.* at ¶ 1.

Sometime prior to February 17, 2022, Schultz and the Claims Administrator reached an agreement to allow Schultz's claim against the Hall Medical Claims Trust in the amount of $700,000 (the "Allowed Schultz Claim Amount"), which would result in a *pro rata* distribution from the Hall Medical Claims Trust on account of that claim in the amount of $445,419.04. The Claims Administrator further allowed costs of $7,650.60, funeral expenses of $2,168.50, and interest of $31.54 for a total award of $425,269.38 (the "Gross Settlement Amount").

Rather than promptly filing a motion seeking a fairness hearing, as directed in the Order for Fairness Hearing, however, counsel waited to file the Motion for Fairness Hearing until June 22, 2022. Meanwhile, at a separate hearing on another claimant's motion to deem her proof of claim timely, the Claims Administrator represented that there were no impediments to the distribution of the entirety of the assets of the Hall Medical Claims Trust (after the other claimant's motion was withdrawn). *See* Doc. 363. As a result, the Court entered a comfort order on February 18, 2022 authorizing the Claims Administrator to make distributions from the Hall Medical Claims Trust. *See* Docs. 361 & 363. Neither the Bencoe Law Firm nor the Claims Administrator brought to the Court's attention that the settlement for the benefit of the Children had not yet been approved.[2]

The Motion for Fairness Hearing requested a determination by the Court that the settlement and distributions to the Children, as set forth in the GAL's confidential report (the "GAL's Report" – Doc. 375) and related documents, in all respects serve the best interests of the Children. The Motion for Fairness Hearing also requested a final order approving the settlement. However, at the preliminary hearing on the Motion for Fairness Hearing, held July 20, 2022, the Claims Administrator represented that all funds had already been distributed from the Hall Medical Claims Trust, and as of July 20, 2022 there were no additional funds available to the Children. *See* Doc. 381. The Court determined that at present it is moot for the Court to consider whether the settlement amount served the best interests of the Children. *See* Doc. 381. The Court may address the issue of whether the Allowed Schultz Claim Amount is in the best interests of the Children in a future hearing if additional funds are transferred to the Hall Medical Claims Trust.

---

[2] The Court notes that the Bencoe Law Firm was not present at the hearing where the Court agreed to enter a comfort order authorizing distribution of assets from the Hall Medical Claims Trust.

The Court held a limited evidentiary fairness hearing on August 4, 2022. The evidentiary hearing addressed the method of disbursing the "Net Settlement Funds" (*i.e.*, the Gross Settlement Amount less the deductions for attorneys' fees, costs, gross receipts taxes, and subrogation/liens). The hearing also addressed the reasonableness of the deductions from the Gross Settlement Amount. The hearing was sealed, *see* Doc. 381, and the Court heard testimony from the GAL and Danielle Ceballes. In addition, the Claims Administrator made representations to the Court.

In the *Order Resulting from Fairness Hearing Held August 4, 2022* (the "First Order" – Doc. 385), the Court approved the purchase of annuities for the benefit of the Children and the disbursement of funds to pay for the annuities. *See* First Order at ¶ 2. The Court further conditionally approved the annuities proposed by the GAL, if it was the GAL's judgment after consulting with her financial advisor/broker, Nicholas Coccimiglio, that the pricing of the two proposed annuities remained competitive. The Bencoe Law Firm recently submitted a proposed order to the Court (the "Proposed Order"), containing language approving annuities for the benefit of the Children with slightly different terms than the annuities that the Court previously approved. The Court therefore infers that the GAL consulted with her financial advisor and found that better pricing for the annuities was available. The Court will direct the GAL to file a supplement to the GAL's Report to document of record the terms of the new proposed annuities.

In the First Order, the Court reserved ruling on the reasonableness of the proposed deductions from the Gross Settlement Amount because it did not have sufficient information regarding the work performed by the Bencoe Law Firm. The First Order fixed a deadline for the Bencoe Law Firm to submit an affidavit outlining what work the firm did on behalf of Ms. Schultz for the benefit of the Children and providing an estimate of the amount of attorney and legal assistant time the law firm spent on the case. The Bencoe Law Firm filed its affidavit on August 11, 2022 (the "Affidavit" – Doc. 389).

In the Affidavit, attorney Lori Bencoe did not provide estimates of time spent on the case but instead provided other reasons that support the reasonableness of the Bencoe Law Firm's attorney's fees. The Affidavit outlined Ms. Bencoe and fellow attorney Cherie LaCour's extensive experience litigating medical malpractice claims, as well as the substantial work and risk the law firm undertakes in screening such claims generally and screening Ms. Schultz's claim in particular, including review of voluminous medical records and advancing the costs to retain experts. Ms. Bencoe attested that throughout her 29-year legal career, she has followed the custom and practice in this legal community of charging a higher contingency fee for medical negligence claims (40-45%) than for general personal injury liability claims (33⅓-40%) because medical negligence claims often are more complex, time consuming, and expensive to prove than other personal injury claims. *See* Doc. 389-1 at p. 4.

As set forth in the GAL's Report, the Bencoe Law Firm originally contracted with Ms. Schultz for a contingency fee of 40% of the damages awarded. Subsequently, the Bencoe Law Firm voluntarily reduced its contingency fee to 33⅓%.

3

The Affidavit further demonstrates that:
- the Bencoe Law Firm performed extensive work of high quality on Ms. Schultz's claims for the benefit of the Children;
- the medical malpractice nature of the case was complex and time-consuming;
- the Bencoe Law Firm advanced fees for experts retained on medical and economic matters;
- the Bencoe Law Firm and Ms. Schultz contracted for a 40% contingency fee, and such fee arrangement was customary for cases of this type; and
- the Bencoe Law Firm declined representation of other medical malpractice claims against the Debtor because of its arrangement with Ms. Schultz, due to the possibility of a non-waivable conflict of interest if the Debtor had insufficient insurance coverage to pay all claims (which in fact occurred).

The GAL's Report also established that the Bencoe Law Firm has an excellent reputation in the community.

Per the GAL's Report, the proposed deductions from the Gross Settlement Amount are:
- attorney's fees for the Bencoe Law Firm of $151,756.46,
- New Mexico gross receipts tax of $11,950.82,
- costs of $9,518.14, and
- subrogation/lien by Medicaid of $8,390.17.

With respect to the subrogation/lien, New Mexico Human Services Division (HSD) is asserting a Medicaid lien. The GAL provided her opinion that the Medicaid lien on the Gross Settlement Amount is invalid, but that it is challenging to negotiate with the entity that handles liens on behalf of HSD. Therefore, the GAL advised that it is prudent for the Bencoe Law Firm to hold the full amount of the alleged lien in trust while attempts are made to resolve the issue. *See* Doc. 375.

Conclusions of Law

Courts in the Tenth Circuit generally apply the *Johnson* factors in evaluating the reasonableness of attorney's fees. *Salone v. United States*, 645 F.2d 875, 879 (10th Cir. 1981) (holding that the *Johnson* factors "should generally be applied where attorneys' fees are authorized") (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)); *In re Permian Anchor Servs., Inc.*, 649 F.2d 763, 768 (10th Cir. 1981) (holding that *Johnson* factors apply to determining reasonable attorney's fees awarded pursuant to a contract in a bankruptcy proceeding).[3,4]

---

[3] *See also In re Mkt. Ctr. E. Retail Prop., Inc.,* 730 F.3d 1239, 1246-49 (10th Cir. 2013) (holding that bankruptcy courts should use the "adjusted lodestar approach" in approving reasonable attorney's fees under § 330, which considers the *Johnson* factors and the factors set forth in § 330(a)(3)); *Arnold v. Arnold (In re Arnold)*, No. CO-15-031, 2016 WL 1022350, at *5 (10th Cir. BAP Mar. 15, 2016) (holding that a bankruptcy court is only required to apply the *Johnson* factors when fees are awarded under 11 U.S.C. § 330 and looking to state law where the attorney's fees at issue were awarded pursuant to state statute).

[4] *Johnson* was abrogated by the U.S. Supreme Court in *Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989), in the context of civil rights cases brought under 42 U.S.C. § 1983.

4

The *Johnson* factors are: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee—this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-55 (10th Cir. 1988) (citing *Johnson*, 488 F.2d at 717-19).

Under the New Mexico Rules of Professional Conduct, the factors to be considered in determining the reasonableness of attorney's fees are substantially the same as the *Johnson* factors.[5] NM Rules of Pro. Conduct R. 16-105.A. Indeed, they appear to be almost exactly the same except that *Johnson* has two additional factors which Rule 16-105 does not: the undesirability of the case and awards in the similar cases.

Based on the Court's findings, the Bencoe Law Firm has established that its 33⅓% fee is reasonable under the *Johnson* factors. The *Johnson* factors apply as follows:

(1) *the time and labor involved*—the Bencoe Law Firm expended considerable time and labor on the case, including prior to filing and during the pendency of the Debtor's bankruptcy case;

(2) *the novelty and difficulty of the question*—medical malpractice claims are complex to evaluate and prosecute;

(3) *the skill requisite to perform the legal service properly*—significant skill is required to successfully prosecute a case of this type;

---

Unlike *Johnson*, the Supreme Court held in *Blanchard v. Bergeron* that the amount set forth in the prevailing party's fee agreement is not a ceiling on the party's recovery for attorney's fees: "The presence of a pre-existing fee agreement may aid in determining reasonableness. . . . But as we see it, a contingent-fee contract does not impose an automatic ceiling on an award of attorney's fees[.]" *Id.* at 93. In reaching this decision, the Supreme Court noted that fee awards in civil rights cases do not only benefit the individual plaintiff, but rather have benefits for the named plaintiff and society at large. *Id.* at 96.

[5] The New Mexico factors include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent. NM Rules of Pro. Conduct R. 16-105.A.

(4)  *the preclusion of other employment by the attorney due to acceptance of the case*—the Court infers that the Bencoe Law Firm was precluded from using the time it spent on Ms. Schultz's case to work on other cases, and the Bencoe Law Firm further expressly declined cases that posed a potential conflict with Ms. Shultz's case;

(5)  *the customary fee*—the rate is at or below the customary fee for cases of this type;

(6)  *any prearranged fee*—the Bencoe Law Firm and Ms. Schultz agreed on a contingency fee of 40%, which the Bencoe Law Firm voluntarily reduced to 33⅓%;

(7)  *time limitations imposed by the client or the circumstances*—there was no evidence with respect to this factor;

(8)  *the amount involved and the results obtained*—while the damages alleged were several million dollars, there was also time, expense, and risk involved in further litigation;

(9)  *the experience, reputation, and ability of the attorneys*—the Bencoe Law Firm has extensive experience, an excellent reputation, and the ability to perform high quality legal work;

(10) *the undesirability of the case*—there were facts which created risks to an attorney accepting this case, such as significant, out-of-the-ordinary issues with comparative fault;

(11) *the nature and length of the professional relationship with the client*—the Bencoe Law Firm has been representing Ms. Schultz in the case since 2017; and

(12) *awards in similar cases*—no evidence was presented with respect to this factor.

While the Bencoe Law Firm did not provide actual or estimated time spent on the case, it is not a requirement for demonstrating reasonableness of attorney's fees in a contingency fee case. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 808, 122 S. Ct. 1817, 1828, 152 L. Ed. 2d 996 (2002) (holding that a court may—but not must—require counsel to submit a record of the hours spent on the case, as an aid to the court's assessment of the reasonableness of the contingency fee in Social Security benefit cases).

The only consideration weighing against the reasonableness of the attorney fees charged is the delay between the settlement reached between Ms. Schultz and the Claims Administrator and the filing of the Motion for Fairness Hearing. By the time the Motion for Fairness Hearing was filed, the Claims Administrator had already distributed all funds from the Hall Medical Claims Trust. This delay prevented the Court from fulfilling its duty to consider whether the settlement was in the best interests of the Children.[6] The delay might justify a reduction in the 40% contingency fee agreed between the Bencoe Law Firm and Ms. Schultz. Because the

---

[6] The Court notes that it has no reason to believe the settlement was not in the best interests of the Children.

Bencoe Law Firm already reduced its contingency fee from 40% to 33⅓%, however, considering all of the evidence, the Court finds that the 33⅓% contingency fee is reasonable.

The other deductions from the Gross Settlement Amount are for New Mexico gross receipts tax, costs, and subrogation/liens for a Medicaid lien. The amount of New Mexico Gross Receipts Tax and costs are straightforward amounts that are properly deducted from the Gross Settlement Amount. With respect to the Medicaid lien, the Court agrees that the amount of the alleged lien shall remain in the Bencoe Law Firm's trust account until such time as the matter is resolved, with the funds then either payable to HSD or to be split equally between the Children.

WHEREFORE, IT IS HEREBY ORDERED:

1. The deductions from the Gross Settlement Amount set forth in the GAL's Report—consisting of: (1) attorney's fees in the amount of $151,756.46, (2) New Mexico gross receipts tax in the amount of $11,950.82, (3) costs in the amount of $9,518.14, and (4) subrogation/liens in the amount of $8,390.17—are approved.

2. The Court directs the GAL to file under seal a supplement to the GAL's Report, attaching the insurance company's revised Structured Settlement (Annuity) Proposals the GAL asks the Court to approve. If the terms are substantially similar to those set forth in the Proposed Order submitted by the Bencoe Law Firm, the Court by a separate order will approve the purchase of the annuities.

3. Although the Court sealed the fairness hearing, it is not necessary to seal this order.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: September 12, 2022

COPY TO:

<u>Counsel for Claimant Sylvie Schultz</u>
Lori M. Bencoe
Cherie L. LaCour
Danielle Ceballes
Bencoe & LaCour Law, P.C.
9201 Montgomery Blvd. NE, Ste. 404
Albuquerque, NM 87111

7

Case 19-10585-j7    Doc 392    Filed 09/12/22    Entered 09/12/22 16:16:55 Page 7 of 8

Guardian *Ad Litem*
Feliz Angelica Rael
505 Marquette NW, Ste. 1300
Albuquerque, NM 87102

Claims Administrator
Gregory W. Chase
5901 Wyoming NE #J-284
Albuquerque, NM 87109